```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
ASHLEY LEBRON,

                    Plaintiff,
                                                                          Memorandum of
        -against-                                                         Decision & Order
                                                                          16-cv-4666(ADS)(ARL)
EDWIN ELPIDIO ENCARNACION,

                    Defendant.
--------------------------------------------------------------------x
```

FILED
CLERK
5/31/2017 2:49 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

APPEARANCES:

**Robert Hiltzik, Esq.**
*Attorney for the Plaintiff*
380 N. Broadway, Penthouse West
Jericho, NY 11753

**Lanza, Reich & Daniel**
*Attorneys for the Defendant*
221 W. 37th Street
New York, NY 10018
       By:   Robert J. Lanza, Esq.
             Richard C. Ebeling, Esq., Of Counsel

**SPATT, District Judge:**

On August 22, 2016, the Plaintiff Ashley Lebron, a Nassau County resident, commenced this diversity action against the Defendant Edwin Elpidio Encarnacion, a citizen and permanent resident of the Dominican Republic, alleging various theories of New York tort liability.

Presently before the Court is a motion by the Defendant, seeking to dismiss the complaint on the following grounds: (1) lack of personal jurisdiction under Federal Rule of Civil Procedure ("FED. R. CIV. P.") 12(b)(2); (2) *forum non conveniens*; and (3) failure to state a claim under FED. R. CIV. P. 12(b)(6).

For the reasons that follow, the Court finds that personal jurisdiction over the Defendant is lacking, and therefore, the portion of the motion seeking relief under Rule 12(b)(2) is granted.

1

## I. BACKGROUND

The Defendant is a professional baseball player who, during the relevant time period, was employed by the Toronto Blue Jays.

He met the Plaintiff for the first time on August 20, 2013, following a game between the Blue Jays and the New York Yankees at Yankee Stadium in the Bronx.

The two carried on a non-romantic relationship until mid-February 2016, when, during a weekend visit to the Dominican Republic, the two had sexual relations.

On or about February 17, 2016, as the Plaintiff was returning home to New York, she began experiencing symptoms of, and was later diagnosed with, genital herpes and chlamydia.

The gravamen of this action is the Plaintiff's contention that she contracted these sexually-transmitted diseases ("STDs") from the Defendant; that he knew at the time of their liaison that he was infected with the STDs; and that he tortiously failed to disclose that fact to her.

## II. DISCUSSION

Relevant to this opinion, the Defendant contends that the complaint must be dismissed because the Court lacks personal jurisdiction over him.

### A. The Standard of Review under FED. R. CIV. P. 12(b)(2)

Rule 12(b)(2) authorizes a party to seek dismissal on the ground that the Court lacks personal jurisdiction over him. However, as the party attempting to invoke the Court's jurisdiction, it is the Plaintiff that bears the burden of showing that personal jurisdiction exists over the Defendant. *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).

"Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Id.* (citing *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854, 111 S. Ct. 150, 112 L. Ed. 2d 116 (1990)). In doing so, "the plaintiff need only make a *prima facie* showing," and "[t]he allegations in the complaint must be taken as true

to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)).

B.     The Applicable Legal Framework – A Two-Part Test

In resolving questions of personal jurisdiction in a diversity action, the Court must conduct a two-part inquiry: "First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." *See Metropolitan Life Ins. Co.*, 84 F.3d at 567.

1.     Part One: The Defendant's Amenability to Suit under New York's Laws

First, the Court must determine whether, under the facts and circumstances of a given case, New York law supports the exercise of either general jurisdiction (also called "all-purpose jurisdiction") or specific jurisdiction (also called "case-linked jurisdiction"). *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). General jurisdiction "permits a court to adjudicate any cause of action against the [ ] defendant, wherever arising, and whoever the plaintiff," while specific jurisdiction is only "available when the cause of action sued upon arises out of the defendant's activities in [the] state." *Id.* (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010)).

a.     General (or "All-Purpose") Jurisdiction

The authority for New York courts to exercise general jurisdiction over a non-domiciliary is found in New York Civil Practice Law and Rules ("CPLR") § 301, which provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."

This provision has been interpreted as authorizing jurisdiction over non-domiciliaries "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at

home in the forum state." *Goodyear Dunlop Tires Organizations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

### b. Specific (or "Case-Linked") Jurisdiction

By contrast, the statutory basis for specific jurisdiction is found in New York's long-arm statute, which, as to causes of action specifically arising from the Defendant's conduct in the state, allows the Court to exercise personal jurisdiction over a non-domiciliary who:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
3. commits a tortious act without the state causing injury to a person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
   (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
   (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
4. owns, uses or possesses any real property situated within the state.

CPLR § 302(a).

### 2. Part Two: The Constitutional Inquiry

"Whether specific or general, . . . the exercise of personal jurisdiction over a defendant is informed and limited by the U.S. Constitution's guarantee of due process." *Brown*, 814 F.3d at 625. Thus, if the requirements of CPLR § 301 or § 302 are satisfied, the Court must address whether the exercise of jurisdiction would comport with the Due Process Clause. *See Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (citations omitted).

"The constitutional analysis under the Due Process Clause consists of two separate components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Id.* at 60 (quoting *Chloé*, 616 F.3d at 164). As the Second Circuit has explained:

> The "minimum contacts" inquiry requires us to consider "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." [*Chloé*, 616 F.3d at 164.] The "reasonableness" inquiry requires us to decide "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' – that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Id.*

*Licci*, 673 F.3d at 60.

With these legal principles in mind, the Court turns to the parties' substantive contentions.

C. Application to the Facts of this Case

    1. Whether the Defendant is Subject to General Jurisdiction in New York

The Plaintiff contends that the Court has all-purpose jurisdiction over the Defendant for two reasons. First, the Defendant's regular trips to New York each baseball season to play against the state's two professional teams constitute continuous and systematic contacts here. Second, the Defendant's agents and representatives – including the Major League Baseball Players Association ("MLBPA") and Radegan Sports Management ("Radegan") – are promoting the Defendant's interests in New York on such a continuous and systematic basis that their presence in the state should be imputed to the Defendant.

In the Court's view, these assertions, even if proven, fail to establish a basis for general jurisdiction over the Defendant.

Historically, the standard in New York for determining whether an out-of-state defendant was subject to general jurisdiction centered on whether the defendant was "doing business" in New York on such a "continuous and systematic" basis as to justify its amenability to suit here on matters unrelated to those business dealings. *See, e.g., Laufer v. Ostrow*, 55 N.Y.2d 305, 309-10, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982) ("Under CPLR 301 'the authority of the New York courts [to exercise jurisdiction over a foreign corporation] is based solely upon the fact that the defendant is 'engaged in such a continuous and systematic course of 'doing business' here to warrant a finding of its

'presence' in this jurisdiction' ") (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 437 N.E.2d 321 (1981)).

However, in a pair of relatively recent decisions, namely, *Goodyear Dunlop Tires Organizations, S.A.*, *supra*, and *Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014), the Supreme Court largely eschewed New York's traditional "doing business" standard in favor of an inquiry into whether a defendant's affiliations with New York rendered it essentially "at home" here.

Courts in this Circuit, including this one, have recognized that these decisions "brought uncertainty to application of New York's 'doing business' rule." *Reich v. Lopez*, 38 F. Supp. 3d 436, 454-55 (S.D.N.Y. 2014) (citing cases for the proposition that "it is unclear whether existing New York general jurisdiction jurisprudence remains viable"); *see Gucci Am. v. Bank of China*, 768 F.3d 122, 135 (2d Cir. 2014) (noting that, in *Daimler*, "the Court expressly cast doubt on previous Supreme Court and New York Court of Appeals cases that permitted general jurisdiction on the basis that a foreign corporation was doing business through a local branch office in the forum"); *Justiniano v. First Student Mgmt. LLC*, No. 16-cv-2729, 2017 U.S. Dist. LEXIS 65379, at *9 (E.D.N.Y. Apr. 26, 2017) (Spatt, J.) (noting that *Daimler* "has cast serious doubt on the extent to which a court can exercise general jurisdiction, especially under New York law").

Nevertheless, what has become clear after *Goodyear* and *Daimler* is that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760; *see Justiniano*, 2017 U.S. Dist. LEXIS 65379, at *9 (collecting cases for the proposition that *Daimler* "changed the law of general jurisdiction, making it substantially more difficult to establish that type of jurisdiction"); *Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 387 (E.D.N.Y. 2015) (noting that *Daimler* made it "incredibly difficult to establish general jurisdiction" over out-of-state defendants).

In particular, as it relates to foreign corporations, "[t]he paradigm forum for general jurisdiction" is "the place of incorporation and the principal place of business." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014). In an apparent departure from prior rulings that a foreign corporation could be "doing business" through agents and subsidiaries in multiple jurisdictions, the Supreme Court held that "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 134 S. Ct. at 762 n.20; *see Senne v. Kan. City Royals*, 105 F. Supp. 3d 981, 1018 (N.D. Ca. 2015) (noting that, in *Daimler*, the Supreme Court "emphasized . . . that merely engaging in a 'substantial, continuous and systematic course of business' is [no longer] sufficient to establish general jurisdiction").

Similarly, as it relates to individuals, the new inquiry focuses on whether the defendant may fairly be regarded as "at home" in the forum state – a location which, according to the Second Circuit, is generally limited to that individual's domicile. *See Sonera Holding B.V.*, 750 F.3d at 225.

In fact, an individual's domicile in New York has become something of a *sine qua non* for exercising all-purpose jurisdiction here. *See, e.g., Reich*, 38 F. Supp. 3d at 455 ("For general jurisdiction over an individual to comport with due process, Defendants must be domiciled in New York, served in New York, or have otherwise consented to the court's jurisdiction"); *Mt. Whitney Invs. LLLP v. Goldman Morganstern & Ptnrs. Consulting, LLC*, No. 15-cv-4479, 2017 U.S. Dist. LEXIS 43037, at *8-*9 (S.D.N.Y. Mar. 23, 2017) (holding that, where the individual defendant was not domiciled in New York, the Court lacked a basis for exercising general jurisdiction); *accord Kidney v. Webster*, No. 16-cv-831, 2017 U.S. Dist. LEXIS 26603, at *16 (N.D.N.Y. Feb. 27, 2017); *Singh v. Singh*, No. 15-cv-5372, 2016 U.S. Dist. LEXIS 72131, at *10-*11 (S.D.N.Y. June 2, 2016); *Dumont v. Corr. Corp. of Am.*, No. 14-cv-209, 2015 U.S. Dist. LEXIS 79032, at *8 (D. Vt. Apr. 29, 2015) (Report and Recommendation), *adopted*, 2015 U.S. Dist. LEXIS 78193 (D. Vt. June 17, 2015); *Weinfeld v. Bill L.*, No. 12-cv-63945, 2014 U.S. Dist.

LEXIS 141297, at *6 (E.D.N.Y. Sept. 30, 2014); *Gliklad v. Deripaska*, No. 652641/2015, 2017 N.Y. Misc. LEXIS 1499, at *8 (N.Y. Sup. Ct. Apr. 25, 2017).

Indeed, it is "[o]nly on truly 'exceptional' occasions [that] general jurisdiction [may] extend over individuals who are 'at home' in a state that is not otherwise their domicile." *Sonera Holding B.V.*, 750 F.3d at 225 (citing *Meyer v. Bd. of Regents*, No. 13-cv-3128, 2014 U.S. Dist. LEXIS 68510, at *7 (S.D.N.Y. May 14, 2014)).

In this case, it is undisputed that the Defendant is not domiciled in New York. Accordingly, the rule set forth in *Daimler* and its progeny would appear to preclude the exercise of general jurisdiction based on this fact alone.

Further, however, in the Court's view, the Plaintiff has not made a *prima facie* showing that, his personal domicile notwithstanding, the Defendant's contacts with New York are otherwise so extensive that he may fairly be regarded as "at home" in this state.

Determining whether the Defendant is "at home" in this forum "calls for an appraisal of [his] activities in their entirety, nationwide and worldwide." *Daimler*, 134 S. Ct. at 762 n.20. Thus, the Court's analysis necessarily begins with the observation that the Defendant is neither a United States citizen nor a permanent resident alien. He has never lived in New York and does not own a bank account or other property here. Rather, he has at all times been a citizen and permanent resident of the Dominican Republic, with a temporary residence in Toronto, Canada, where he assertedly lives during the baseball season because his employer, the Blue Jays organization, is headquartered there.

As noted above, the only New York contacts that the Plaintiff attributes to the Defendant are his occasional trips to the state for regularly-scheduled baseball games and his association with a New York-based union and sports management agency. However, in the Court's view, these facts,

8

taken alone or in tandem, do not suffice to establish the contacts necessary to deem New York his "home" in any real sense.

To demonstrate the regularity with which the Defendant visits New York, the Plaintiff submits several years of Toronto Blue Jays game schedules, which show that in each year between 2014 and 2016, the Defendant's team played between 9 and 12 games in New York against the Mets and/or the Yankees. In this regard, she argues that it is reasonable to assume that the Defendant has similarly traveled to New York for a comparable number of games in each of his twelve seasons in the major leagues.

However, even accepting these facts as true, after *Daimler*, they fall far short of demonstrating a presence in New York so "continuous and systematic" that the Defendant can fairly be regarded as "at home" here. *See Adam Mesh Trading Grp., LLC v. Bubba Trading Grp., LLC*, No. 16-cv-2645, 2016 U.S LEXIS 82723, at *9-*11 (S.D.N.Y. June 17, 2016) (finding that an Illinois resident who made monthly visits to New York to solicit business was not subject to general jurisdiction; noting that "[e]ven before *Daimler*, these facts would not have been sufficient, without more, to establish that a defendant was 'doing business' in the state . . . They are certainly not sufficient now that *Daimler* has raised the bar for the exercise of general jurisdiction").

This is especially true given that that the same evidence used to show the Defendant's occasional visits to New York for baseball games also shows that he has, during the same time period, made a comparable number of annual trips to 16 other states and the District of Columbia for the same purpose. Viewing the Defendant's activities "in their entirety, nationwide and worldwide," *id.*, the Court discerns no principled basis for concluding that his trips to New York are any more substantial or otherwise likely to render him "at home" in this State than any other. On the contrary, to borrow a phrase from Justice Ginsberg, after *Daimler* it is reasonable to presume that a

professional athlete who competes in many places can scarcely be deemed at home in all of them. *See Daimler*, 134 S. Ct. at 762 n.20.

Nor is the Court's reasoning altered by the Plaintiff's reliance on the Defendant's association with professional organizations that maintain permanent offices in New York.

In this regard, the Plaintiff relies on the traditional principle of New York law holding that courts may exercise jurisdiction over an out-of-state defendant if the defendant "affiliate[d] itself with a New York representative entity and that New York representative render[ed] services on behalf of the foreign [defendant] that [went] beyond mere solicitation and [were] sufficiently important to the foreign [defendant] that the [defendant] itself would perform equivalent services if no agent were available." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000).

Applying this standard, the Plaintiff contends that the following facts establish an agency relationship pursuant to which the Defendant may be deemed "present" in this state: the MLBPA is a labor union which collectively bargains on behalf of major league baseball players, including the Defendant; Radegan is a sports management agency that conducts various marketing and promotional efforts on the Defendant's behalf; and both entities are headquartered in New York.

However, accepting the truth of these averments; and assuming that the MLBPA and Radegan are themselves present in New York; the Court does not find that these facts are sufficient to support the exercise of general jurisdiction premised on an agency theory.

"The bar for a plaintiff to establish agency in the jurisdictional context is set high." *Doe v. Abercrombie & Kent, Inc.*, No. 09-cv-7052, 2010 U.S. Dist. LEXIS 6268, at *9 (S.D.N.Y. Jan. 19, 2010). For one thing, "[t]he agent must be primarily employed by the defendant and not engaged in similar services for other clients." *Wiwa*, 226 F.3d at 95 (citing *Miller v. Surf Props., Inc.*, 4 N.Y.2d 475, 481, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958)). Further, courts have suggested that the agent must "have the ability to contractually bind or otherwise make decisions on behalf of Defendant." *Rates Tech., Inc. v.*

*Cequel Communs., LLC*, 15 F. Supp. 3d 409, 416 (S.D.N.Y. 2014) (citing *Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F. Supp. 2d 722, 737 (S.D.N.Y. 2001); *Sedig v. Okemo Mountain*, 204 A.D.2d 709, 710, 612 N.Y.S.2d 643 (2d Dep't 1994)).

In this case, there is no evidence to support even a *prima facie* showing that the MLBPA and Radegan fulfill these roles for the Defendant. While the MLBPA, as the Defendant's collective bargaining representative, arguably has the ability to make certain decisions on his behalf, the organization apparently performs the same function for every other baseball player, manager, coach, and trainer in major league baseball. Therefore, the MLBPA is not "primarily employed by the defendant" and is clearly "engaged in similar services for other clients."

The same is true of Radegan, which, despite apparently working to raise the Defendant's public profile and generate business opportunities for him, also clearly performs substantially similar functions for a host of other professional athletes. Further, there is no evidence that Radegan is rendering services on behalf of the Defendant that go beyond mere solicitation. Nor is there any reason to believe that the Defendant has delegated to Radegan any authority to contractually bind him or otherwise make important business decisions on his behalf.

At best, the record shows that the Defendant is one of numerous major league baseball players represented by the MLBPA in labor negotiations and one of several professional athletes whose interests Radegan has been hired to promote. There is no evidence to indicate that the Defendant himself has conducted any business related to these entities in New York, or, importantly, that either of them is specifically directing their efforts on behalf of the Plaintiff toward New Yorkers or the New York market.

Accordingly, the Court is unable to conclude that the facts and circumstances of this case present one of the "truly 'exceptional' occasions" where general jurisdiction may justifiably be extended over a non-domiciliary because his contacts with New York are so extensive as to render

him essentially "at home" here. Therefore, to the extent that the Defendant seeks to dismiss the complaint for lack of general jurisdiction under CPLR § 301, his motion for such relief is granted.

2.  Whether the Defendant is Subject to Specific Jurisdiction in New York

Alternatively, the Plaintiff contends that the Court has specific, or case-linked, jurisdiction over the Defendant under New York's long-arm statute.

a.  Specific Jurisdiction under CPLR § 302(a)(2)

First, the Plaintiff relies on CPLR § 302(a)(2), which, as noted above, permits jurisdiction over an out-of-state defendant who commits a tortious act within New York state. In this regard, the Plaintiff contends that, although her sexual contact with the Defendant concededly occurred in the Dominican Republic, she did not sustain an actionable injury until she returned home from New York and developed signs and symptoms of the STDs. Therefore, according to the Plaintiff, the tort was "committed" for jurisdictional purposes in this state. The Court disagrees.

"Under Second Circuit precedent, the exercise of specific jurisdiction under CPLR § 302(a)(2) requires a tortfeasor to be physically present in New York." *Karoon v. Credit Suisse Grp. AG*, No. 15-cv-4643, 2016 U.S. Dist. LEXIS 24480, at *13 (S.D.N.Y. Feb. 29, 2016); *see Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 803-04 (S.D.N.Y. 2015) (collecting cases for the proposition that, despite the willingness of some New York courts to expand the reach of § 302(a)(2), "the Second Circuit continues to adhere to the traditional, stricter rule" that a defendant must be physically present in New York when the tort is committed), *aff'd*, 660 F. App'x 43 (2d Cir. 2016) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir. 1999)); *see also Pincione v. D'Alfonso*, 506 F. App'x 22, 25 (2d Cir. 2012) (declining to reconsider this Circuit's strict interpretation of § 302(a)(2)); *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997) (holding that, even if the plaintiff suffered injury in New York, "that does not establish a tortious act in the state of New York within the meaning of § 302(a)(2)").

Since there is no dispute in this case that the Defendant did not physically commit the allegedly tortious act within New York state, the Court concludes that personal jurisdiction under CPLR § 302(a)(2) is unavailable. Therefore, to the extent that the Defendant seeks to dismiss the complaint for lack of specific jurisdiction under CPLR § 302(a)(2), his motion for such relief is granted.

b. Specific Jurisdiction under CPLR § 302(a)(3)(ii)

A closer question is presented by the Plaintiff's alternative argument that jurisdiction exists under CPLR § 302(a)(3)(ii), which allows for jurisdiction over an out-of-state defendant who: (1) causes a personal injury in New York (2) by committing a tortious act elsewhere, if (3) he reasonably expects his act to have consequences in this state and (4) derives substantial revenue from interstate or international commerce.

In this regard, the Plaintiff contends that, even if the Defendant was not physically present in New York when he committed the alleged tort, she suffered the ensuing injury here. Again the Plaintiff's theory rests on the premise that she did not sustain an injury at the point of sexual contact with the Defendant, which occurred in the Dominican Republic, but rather when the STDs manifested as physical symptoms, which occurred in New York. Again the Court disagrees.

As the Plaintiff appropriately notes, the enactment of CPLR § 302(a)(3) was apparently a direct outgrowth of the prevailing interpretation of § 302(a)(2), which, as discussed above, makes a tortfeasor's physical presence in New York a prerequisite to exercising jurisdiction over him.

As the Second Circuit has explained:

> The provision [§ 302(a)(3)] was adopted to fill a gap in the New York Long-Arm Statute that was recognized in *Feathers v. McLucas*, 15 N.Y.2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8 (1965). There, the New York Court of Appeals declined to apply section 302(a)(2) . . . to a manufacturer whose negligent construction of a gas tank in Kansas had caused bodily injury in New York State. *Id.*, 15 N.Y.2d at 460, 209 N.E.2d at 77, 261 N.Y.S.2d at 21 (internal quotation marks omitted).
> The following year, according to a Memorandum of the New York Judicial Conference, the New York State Legislature adopted section 302(a)(3) for the purpose of "broaden[ing] New York's long-arm jurisdiction so as to include non-residents who cause

tortious injury in the state by an act or omission without the state." Mem. of Judicial Conference, 1966 N.Y. Sess. Laws 2911 (McKinney) (as quoted in *Reyes v. Sanchez-Pena*, 191 Misc. 2d 600, 608, 742 N.Y.S.2d 513, 520 (N.Y. Sup. Ct. 2002)). According to that memorandum, the amendment was intended to be "broad enough to protect New York residents yet not so broad, even though constitutionally feasible, as to burden unfairly non-residents whose connection with the state is remote and who could not reasonably be expected to foresee that their acts outside of New York could have harmful consequences in New York." *Id.*

*Penguin Group (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 37-38 (2d Cir. 2010).

Since the enactment of this provision, "[c]ourts determining whether there is an injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a 'situs-of-injury' test, which asks them to locate the 'original event which caused the injury.'" *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert*, 171 F.3d at 791) (quoting, in turn, *Hermann v. Sharon Hosp., Inc.*, 135 A.D.2d 682, 522 N.Y.S.2d 581 (2d Dept' 1987)).

Thus, in *Thackurdeen*, *supra*, the district court found that the parents of a student who drowned while studying abroad in Costa Rica could not maintain their tort claims against the out-of-state defendants in a New York court. In dismissing the claims for lack of personal jurisdiction, the court noted that "[t]he 'original event' which caused Plaintiffs' emotional distress was the tragic death of their son, which occurred in Costa Rica." 130 F. Supp. at 806-07. Therefore, although the decedent's parents would undoubtedly continue to suffer emotional injuries in New York where they lived, "a litigant may not carry an injury home for purposes of section 302(a)(3)." *Id.* at 805. In affirming this result, the Second Circuit concurred that the "original events" giving rise to the Plaintiffs' injuries had all occurred outside New York, thus making jurisdiction under CPLR § 302(a)(3) improper. *See Thackurdeen*, 660 F. App'x at 47.

Similarly, in *Domond v. Great Am. Rec., Inc.*, 116 F. Supp. 2d 368 (E.D.N.Y. 2000) (Spatt, J.), this Court found that an individual who sustained a bodily injury when she fell off an amusement park ride in New Jersey could not maintain her tort claim against the out-of-state corporation that owned and operated the amusement park. In so holding, the Court noted that the "thrust of

[CPLR § 302(a)(3)] is directed to the imparting of the original injury within the State of New York, and not the resultant damage." *Id.* at 373. Therefore, although the Plaintiff may "continue[ ] to suffer the damages resulting from that accident at her home in New York, the locus of the injury was not in the State of New York, and thus, outside the scope of CPLR § 302(a)(3)" *Id.* at 374.

The Plaintiff does not dispute the application of the "situs-of-injury" test, but argues that this case is distinguishable from the typical personal injury action where, as in *Thackurdeen* and *Domond*, the injurious consequences of the tort are felt in close proximity to the event that caused them, thus resulting in the injury and the tort occurring in a single, readily-identifiable place and time – *e.g.*, Costa Rica or New Jersey.

Rather, the Plaintiff claims that her injury, namely, contracting STDs, is properly viewed as a wholly separate occurrence from the tort that caused it, namely, sexual intercourse with the Defendant. She likens this case to asbestos cases where, regardless of when an individual may have been exposed to cancer-causing agents, the actionable "injury" does not occur unless and until the disease has become symptomatic.

To support this theory, the Plaintiff relies on *Penny v. United Fruit Co.*, 869 F. Supp. 122 (E.D.N.Y. 1994). There, a citizen of the United Kingdom spent approximately four years working as a chef on various oceangoing vessels. He retired in 1962; became a naturalized American citizen in 1974; and was subsequently diagnosed with mesothelioma, a rare form of cancer, which caused his death in 1986. His widow commenced an action against the out-of-state shipowners in this Court, alleging that the decedent had been exposed to asbestos, which caused his illness, while working on their vessels.

The defendants disputed whether they were amenable to suit in this District, arguing that the decedent's injury took place at the point of exposure to asbestos, which occurred "at some unknown place and time during his years of service at sea," but which all parties apparently agreed

15

was not in New York. *Id.* at 126. Nevertheless, the plaintiff argued – as does the Plaintiff in this case – that the decedent's injury was not his initial exposure to the cancer-causing agent, but rather, was the manifestation of the cancer itself, which only became apparent after the decedent left the defendants' employ and took up residence in New York.

The court agreed with the plaintiff, ruling against prior cases that had "rigidly equat[ed] exposure with injury," and concluded that the decedent's injury was neither complete nor actionable at the point of exposure to asbestos. *Id.* at 127. Rather, because the decedent's illness first appeared in New York, many years after he emigrated and became domiciled there, the allegedly tortious conduct "caused injury in New York" within the meaning of CPLR § 302(a)(3). *Id.* at 128 (quoting *In re DES Cases*, 789 F. Supp. 552, 570 (E.D.N.Y. 1992)).

Guided by this authority, the Plaintiff submitted an affidavit by Dr. Noah Robbins, who is board certified in internal medicine and infectious disease and is an editor of the Journal of the Sexually Transmitted Diseases Association. Dr. Robbins avers that both of the STDs allegedly transmitted from the Defendant to the Plaintiff in this case have sometimes weeks-long incubation periods, during which the exposed individual may not develop signs and symptoms of the disease. Importantly, Dr. Robbins asserted that from the time of the initial exposure it could take several days for the infection to occur and for the disease to manifest itself.

Thus, the Plaintiff contends that although her sexual relations with the Defendant occurred in the Dominican Republic, she did not sustain an actionable injury until she returned home from New York and developed signs and symptoms of the STDs.

However, in the Court's view, *Penny* is distinguishable from this case because, due to the seafaring nature of the decedent's lifestyle during the period of time he claimed to be exposed to asbestos, "there [was] no ascertainable site of 'original injury' outside the state [of New York] on which [he] might have based an action." *Penny*, 869 F. Supp. at 127. As noted, in *Penny*, the exposure

16

occurred "at some unknown place and time during [the decedent's] years of service at sea." Thus, if jurisdiction did not lie in New York, it is possible that the decedent's estate would have been effectively denied a remedy.

By contrast, in this case, there is a discrete "original event" – the parties' sexual intercourse – without which there would be no discussion of the biological intricacies of contracting STDs. Indeed, accepting the Plaintiff's allegations as true, it was during this original event that the Defendant allegedly concealed a material fact about his health; that the Plaintiff received and relied upon this alleged misrepresentation; and that the physical conduct upon which all of the Plaintiff's tort theories are based occurred. *See Pariente v. Scott Meredith Literary Agency, Inc.*, No. 90-cv-547, 1991 U.S. Dist. LEXIS 1607, at *8 (S.D.N.Y. Feb. 11, 1991) (noting that "an injury in New York resulting from a misrepresentation" requires a showing "that the misrepresentation was made in New York, or was received and relied upon in New York").

Thus, contrary to the Plaintiff's contention, the Court does not read *Penny* as establishing a bright-line rule for all cases involving the transmission or contraction of potentially latent diseases. On the contrary, the holding of *Penny* is less persuasive where, as here, the "site of 'original injury' " is no mystery – it is the Dominican Republic, where, between February 13, 2016 and February 16, 2016, allegedly possessing unequal knowledge of the relevant circumstances, the parties had unprotected sex. Accepting the Plaintiff's allegations as true, this is the "original event" which caused the injury, and the Dominican Republic, not New York, is where the original injury was imparted.

Furthering detracting from the Plaintiff's position is a material distinction that the Court finds appropriate to draw between the relative lengths of time that the diseases at issue in *Penny* and in this case remained dormant.

In *Penny*, the decedent was exposed to asbestos between 1956 and 1962, but did not develop signs of mesothelioma until more than a decade later. To be sure, it was relevant to the court's

opinion in that case that, in the intervening years, the decedent had retired, become a naturalized U.S. citizen, and took up residence in New York, all before the onset of the disease. Other cases applying *Penny*'s reasoning similarly involve decades-long lapses between the plaintiff's exposure to a toxic substance and the manifestation of a resultant illness.

For example, the *Penny* court relied on Judge Weinstein's opinion in *In re DES Cases*, *supra*, which found that the out-of-state defendants were subject to jurisdiction in this District for producing an allegedly harmful pregnancy drug that was ingested decades earlier, when the plaintiffs were *in utero*, in New York.

Similarly, in *Hamilton v. Garlock, Inc.*, 1999 U.S. Dist. LEXIS 2796 (S.D.N.Y. Mar. 9, 1999), the district court relied on the reasoning in *Penny* to find that it had jurisdiction over claims against a Canadian corporation brought by the estate of a Navy boilerman who had been exposed to asbestos while in the service more than 30 years earlier.

In the Court's view, these cases do not lend support for the Plaintiff's theory in this case. Rather, in the *Penny* line of cases, lengthy periods of time elapsed between the allegedly tortious conduct and the resultant injuries, during which time it is questionable whether the plaintiffs and their decedents even knew that an "original event" had occurred. Thus, decades later, when their injuries first appeared in New York, there was no other logical place to situate a lawsuit.

This is decidedly unlike the relatively short incubation period for herpes and chlamydia relied upon by the Plaintiff. Indeed, despite Dr. Robbins' assertion that it could take several days or weeks after the initial exposure for the STDs to manifest, the Plaintiff does not allege that this was her experience. Rather, the complaint and the Plaintiff's supporting affidavit indicate that the parties had unprotected sex on the evening of February 16, 2016, and that she began feeling symptoms at 5:00 P.M. the very next day, while still en route from the Dominican Republic to New York. In the Court's view, this approximately 24-hour period between the allegedly tortious

conduct and the onset of the Plaintiff's injury is an insufficient basis upon which to conclude that the unique body of caselaw surrounding latent asbestos-related cancers and/or toxic torts is applicable. *See In re DES Cases*, 789 F. Supp. at 557 (noting that the court's reasoning in that case illustrated "why traditional limits on personal jurisdiction must be modified for *mass torts*") (emphasis supplied).

On the contrary, the Court finds this case to be much closer factually to *Thackurdeen* and *Domond*, where the "original event which caused the injury" is clearly traceable to a particular place and time, which is not in New York, even though the Plaintiff apparently will continue to suffer the consequences of her injury here.

Under these circumstances, the Court finds that the situs of the Plaintiff's injury is the Dominican Republic, and therefore, personal jurisdiction under CPLR § 302(a)(3) is unavailable. Accordingly, to the extent that the Defendant seeks to dismiss the complaint for lack of specific jurisdiction under CPLR § 302(a)(3)(ii), his motion for such relief is granted.

### III. CONCLUSION

Based on the foregoing, the Court concludes that personal jurisdiction over the Defendant is lacking, and consequently, the Defendant's motion to dismiss the complaint on that ground under FED. R. CIV. P. 12(b)(2) is granted. Having reached this conclusion, the Court need not address the parties' alternative arguments regarding *forum non conveniens* and the facial sufficiency of the Plaintiff's complaint.

The Clerk of the Court is directed to close this case.

It is **SO ORDERED:**

Dated: Central Islip, New York
May 31, 2017

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge